## Case No. 16,335.

### UNITED STATES v. SMITH.

### TEN OTHER SIMILAR CASES.

[1 Hughes, 347.] [1]

Circuit Court, E. D. Virginia.  Aug. 2, 1877.

CIVIL WAR — RIGHTS OF CONQUEST — DEBTS DUE INSURGENT STATE — JURISDICTION OF FEDERAL COURTS.

1. Where a person was indebted, for money had and received, to one of the insurgent state governments which were overthrown by the United States in 1865, and was sued by the United States, after the return of peace, in an action of assumpsit, on demurrer, *held*, that the original assumpsit of the defendant to the insurgent state government was a debt at common law and not jure belli; and that, the United States having succeeded by right of conquest to the debt, the law, after peace, implies an assumpsit by the defendant to pay the debt to the United States, and will treat the latter assumpsit as a common law obligation and not as arising jure belli.

2. A circuit court of the United States has jurisdiction of an action of assumpsit brought upon such a debt, whether arising at common law or otherwise

The government of Virginia under the Confederacy, having borrowed a large amount of specie from one of the banks in Richmond, the then governor (William Smith), and other officers, withdrew it on or about the 2d day of April, 1865, which was the day preceding the occupation of Richmond by the Union army. Of the specie there were received in distribution by several officers respectively, the following sums. to be accounted for as advances of salary for the fiscal year, commencing April 1st, 1865, viz.: by

| | |
|---|---|
| William Smith | $5000 |
| George W. Mumford | 2000 |
| John O. Chiles | 1000 |
| Edward H. Fitzhugh | 1000 |
| P. F. Howard | 500 |

At a later date, to wit, in August, 1865, further sums of this specie were distributed to officers of the government then expired, to wit: to

| | |
|---|---|
| Henry W. Thomas | $500 |
| Shelton C. Davis | 300 |
| John L. Shackleford | 100 |
| Daniel Denoon | 100 |
| S. L. Moncure | 100 |
| A. A. Lorentz | 100 |

During the first session of the legislature of the Alexandria government (that of 1865–66), the committee of courts of justice of the house of delegates was charged with an inquiry into this matter. On December 20th, 1865, that committee reported, through William T. Joynes, one of its members, that in respect to this money, the then state government of Virginia did not succeed to the rights of the state government which was overthrown in April, 1865, and could not claim this money; and, that whatever rights of conquest accrued by the overthow of the late government belonged to the United States.

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

There was no demand or suit by the subsequent state government for these sums of money. Latterly, the United States have brought actions of assumpsit against each of the persons named after personal demand made. The amount received by E. H. Fitzhugh was some time ago paid by him into the treasury of Virginia. As but one of the suits (that against William Smith) involved a sum large enough to authorize it to be carried to the supreme court, that has been heard first, and the others will be stayed to await the result, in order that the principle which may be settled in it may govern the other cases.

The case was heard in June on the demurrer to the declaration; and the decision of the court on the points raised by the demurrer was rendered on the 2d day of August, 1877.

L. L. Lewis, Dist. Atty., for plaintiffs.

R. T. Daniel, Atty. Gen., W. B. Taliaferro, Robert H. Stiles, Bradley T. Johnson, and William L. Royal, for defendants.

HUGHES, District Judge. This case is before me not upon issues of fact, but upon facts admitted by demurrer, and upon the law as arising upon the facts so admitted. The allegations of the declaration are these: (1) That the defendant was indebted to the insurgent government of Virginia in the sum of $5000 on the 2d day of April, 1865; (2) that he promised the said government to pay the said indebtedness; (3) that the said insurgent government was, on the 9th April, 1865, overthrown by the United States by force of arms, and the lawful authority of the United States re-established, in the state; and, (4) that the defendant, after the said 9th day of April, 1865, in consideration of the premises, undertook and promised to pay to the United States the said sum of $5000. The demurrer admits these allegations to be true; yet denies that they constitute a case of indebtedness by the defendant to the United States, and prays judgment, etc.

In technical strictness, by admitting the truth of these several allegations, the demurrer admits the case of the plaintiffs to be sufficient to warrant a judgment for him. But let it be assumed that the fourth allegation, being an inference of law, is not admitted by the demurrer. Then, the question for decision is, whether the United States acquired by conquest of, and succession to, the insurgent government of Virginia, on the 9th April, 1865, such a right to the money which was then due from the defendant to the insurgent state government as was valid and sufficient to raise the assumpsit set forth in the fourth clause of the declaration. Stating the case differently, the question before me is, whether the United States succeeded by conquest and succession to the rights of action, as well as the property, of the insurgent state government,

which was overthrown on the 9th April, 1865. If so, the law will adjudge that the defendant promised to pay to the United States the money which he thus owed to that government, and the court will render judgment against him accordingly. As a matter of history, it cannot be disputed that it was the power of the United States, and not of any state, or of what was called the Alexandria government of Virginia, which was brought to bear against the insurrectionary governments of the South; or, that the overthrow and conquest of the insurrectionary government of Virginia was in fact effected by the United States. Therefore, whatever rights of property or of action ordinarily result under the law of nations and of war from conquest, resulted to the United States, on the 9th April, 1865, and did not result to what was called the Alexandria government of Virginia. The very able committee of the general assembly of Virginia, Mr Marshall at its head, which had this matter in charge, in the winter of 1865, in the report submitted through one of its members, Judge Joynes, one of the ablest and most learned judges of the state, conceded this right to the United States in their report, in which they said: "It is very clear that the present government representing the state of Virginia cannot assert any claim to this money by right of conquest, for all the rights of conquest, whatever they be, belong to the United States."

And, therefore, the particular question for decision in this case is, whether the right of action, which the demurrer admits that the insurgent state government of Virginia had against the defendant on the 2d to the 8th April, 1865, for $5000, passed by conquest, and, after the peace following complete conquest, to the United States, on or after the 9th April, 1865. Does succession, after complete conquest and peace, give to the conquering power the right of enforcing, by civil action, the payment of debts due, at the date of conquest, to the conquered power? In this case it is to be observed that there was not merely a temporary conquest, and that condition of quasi belligerence attending such an event, but complete and final conquest producing absolute peace, and that undisputed succession of one power by the other resulting from such a conquest. It was a case of undisputed succession peacefully held after complete, final conquest. I will also premise that such suits as this can affect only such property or rights of action as belonged to the insurgent government of Virginia as such, and not property or rights which belonged or belong to the people of Virginia through their legal government. The former alone were the subjects of conquest; the latter were not. Speaking of what passes by conquest to the conquering power, the supreme court of the United States says, in U. S. v. Lyon, 16 Wall. [83 U. S.] 435, the conqueror's "rights are no longer limited to the

mere occupation of what he has taken into his actual possession, but they extend to all the property and rights of a conquered state, including even debts as well as personal and real property." Mr. Justice Clifford, in delivering this opinion of the court, and using the language thus quoted, simply gives expression to the settled principle of the law of nations. In the case of Advocate General of Bombay v. Amerchund, cited at length in Elphinstone v. Bedreechund, 1 Knapp, 329, it was held that money in bank belonging to a conquered prince may be recovered in a suit against the banker by the conquering nation. In the case of U. S. v. McRae, 8 Eq. Cas. 72, it was said by the vice chancellor: "I apprehend it to be clear, public, universal law, that any government which de facto succeeds to any other government, whether by revolution or restoration, conquest or reconquest, succeeds to all the public property, to everything in the nature of public property, and to all rights in respect of the public property of the displaced power, whatever may be the nature or origin of the title of such displaced power. Any such public money in any treasury, any such public property found in any warehouse, fort, or arsenals, would, on the success of the new or restored power, vest ipso facto in such power, and it would have the right to call to account any fiscal or other agent, or any debtor or accountant to or of the persons who had exercised and had ceased to exercise the authority of a government, the agent, debtor, or accountant having been the agent, debtor, or accountant of such persons in their character or pretended character of a government. But this right is the right of succession, is the right of representation, is a right, not paramount, but derived, I will not say under, but through, the suppressed and displaced authority, and can only be enforced in the same way, and to the same extent, and subject to the same correlative obligations and rights, as if that authority had not been suppressed and displaced, and was itself seeking to enforce it." All the authorities have held the same doctrine, and, indeed, it has never been disputed. These authorities close the question in favor of the right of the United States to the property of the overthrown government of Virginia, as the insurgent government, and to the debts due, whether from citizens or from foreigners, to that government, at the time of its overthrow.

The objection of defendant's counsel, that assumpsit will not lie for an obligation arising by implication from a debtor of a conquered state to the conquering government after conquest, because promises do not arise from acts of violence, is not tenable. It is not denied, it is admitted by demurrer, that the defendant by receiving from the state government before its overthrow, $5,000 not due to him, became indebted to that government. It is settled law, as already shown, that a conquering power after the conquest, succeeds to the debts which were due to the conquered

power. If, therefore, by the law of nations, which is part of the law of England and America, such a debt becomes due from a citizen to the conquering power, then the law of England and America, even the common law of the two countries, implies an assumpsit, a promise on the part of that citizen to pay the debt. The citizen owes the debt to some one. The money he owes does not belong to himself. He is bound in conscience to pay it to the rightful owner, who is entitled ex equo et bono to receive it. And the law of nations, as well as of England and America, declares that the conquering power is that rightful owner. There is no violence between the debtor, as such, and the conquering power. The violence was between the two governments. The debt, as a debt, becomes due to the conquering power, irrespective of the consideration whether the debtor was a combatant or a non-combatant. In his character of debtor, not in that of man or woman, combatant or non-combatant, native or foreigner, he became, qua debtor to the conquered power, the debtor of the conquering power. This is not a question between soldier and citizen, growing out of acts committed while war was flagrant, in the course of the soldier's service, as in Hughes v. Litsey, 5 Am. Law Reg. (N. S.) 148. Nor is it a question of prize or capture durante bello, concerning property taken or right acquired during the progress of war, as in Coolidge v. Guthrie [Case No. 3,185], and in Elphinstone v. Bedreechund, 1 Knapp, 316, where the court expressly says that the capture was made nondum cessante bello. The indebtedness of the defendant in this case to the insurgent government of Virginia, was not one arising jure belli between belligerents, but by contract between friends. It is true that the succession of the United States to the insurgent government was an event durante bello; but that event having been completed, the indebtedness of the defendant to the succeeding government arising after the close of the war, was not an indebtedness jure belli. but by contract. Being indebted, the implied assumpsit of the defendant to pay, his promise to pay, is a common law obligation. A debtor may be liable in assumpsit to a creditor, but if by violence the creditor is killed, the debtor then becomes liable in assumpsit to the creditor's administrator.

I do not think, therefore, with defendant's counsel, that this is a case of first impression. It is an action at common law, founded upon a contract arising of common law implication, and as such, is not new or unprecedented. Nor is the objection of defendant's counsel tenable, which they take on the score of the jurisdiction of the court. The circuit courts of the United States have original cognizance "of all suits at common law, etc., etc., where the United States is plaintiff" (see clause 3, § 629, Rev. St. U. S.), or in other words "of all suits of a civil nature at common law or in equity, etc., etc., in which the United States is plaintiff, etc., etc." Jurisdiction Act March 3, 1875, § 1 [18 Stat. 470]. These definitions of jurisdiction do not refer to the claim sued upon, its character or its origin, but only to the nature and form of the action which may be made the instrument for establishing the demand. A citizen of the United States, indebted to a citizen of France by a contract made in Paris, may be sued in the circuit court of the United States for the district in which he resides in this country. His demand is not a common law demand, but if sued upon it, in an action at law, the suit is in form and character a suit at common law. He may be sued in assumpsit, if the demand be such as to make that form of action proper. So a demand arising durante bello, and not arising at common law, may be sued upon in an action at common law in this country, either in a state or federal court. Under whatever law, whether of peace or war, of the domicile or foreign jurisdiction, the obligation of the defendant arises, the suit proper to enforce it according to the forms of action employed in England or this country, whether it be at common law or in equity, may be brought in the federal courts, if the courts have jurisdiction of the parties to the suit.

As to the proposition of defendant's counsel, that this money is a trust fund, and the execution or abuse of the trust must be examined into by Virginia alone,—that is a question not yet arising in the cause, and it does not appear how it will arise. The state has, by adopting the report of the committee of 1865, and by long inaction, declined to look into or after the trust, if such it be. The defendant has put in no plea in the cause claiming that he has discharged his fiduciary obligations in respect to the debt as a trust fund. And it is not until all action of the sort has seemed to have become wholly improbable, that the United States have now moved in the matter. As a preliminary step to devoting the fund to its trust purposes, it would seem incumbent that the person charged with the legal title in the trust should proceed to collect it in. and as the legal title, by the law of nations and of the land. is in the United States, we have a right to presume that, if the fund bears the character of a trust, the United States will, after collecting it, give to it the direction required by the trust.

As to the proposition of defendant's counsel, that the war of the United States was not against the insurgent government of Virginia, and that the overthrow of that government was not a conquest, but only the setting aside of one government and the assumption of its functions by another, it can hardly find acceptance in view of the facts of history. The event happened at the close of a frightful war, and was directly produced by arms, and by armies in the field. The power of the United States was directed against the in-

surgent state governments, even more than against their confederated authorities. The war was conducted for the overthrow of those governments. When they were crushed, the war ceased, and the historical fact of conquest cannot be changed or obliterated by the employment of theoretic paraphrases in speaking of it. As to the insurgent state governments, it was a conquest, and was followed by the legal results of conquest. This debt is due. It is due to some rightful claimant, and I think the law makes it sufficiently apparent who that claimant is.

The demurrer must be overruled.